# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

SANDRIO DEJESUS-ANDUJAR,       )
                                )
    Petitioner,              )
                                )
vs.                             )   Case No. 11-1277-CV-W-DGK-P
                                )
MICHAEL BOWERSOX,               )
                                )
    Respondent.              )

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, Sandrio DeJesus-Andujar, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on December 14, 2011, seeking to challenge his 2007 conviction and sentence for attempted forcible sodomy, which was entered in the Circuit Court of Jackson County, Missouri.

The petition raises the following sole ground for relief: that trial counsel was ineffective for advising petitioner to waive his right to testify in his own defense. Respondent contends that this ground is without merit.

## SUMMARY OF THE FACTS

On appeal from the denial of petitioner's Mo. Sup. Ct. Rule 29.15 motion, the Missouri Court of Appeals summarized the facts as follows:

> In January of 2007, [petitioner] was incarcerated at the Livingston County Jail. He was housed in the same block as the victim ("Victim") and others, including Michael Gale and Jeremiah Muth, [petitioner's] co-defendants. While Victim was in the common area, Gale and [petitioner] attempted to hold Victim down and to grab his buttocks. Initially, Victim thought the other two men were just joking around, but he became convinced that they were not joking when they persisted in chasing him around the common area, attempting to grab his buttocks and his private area. [Petitioner] attempted to pull Victim's pants down while Gale held him against

a wall. [Petitioner] and Gale attempted to get Victim into an empty cell. Gale repeatedly tried to kiss Victim. [Petitioner] threatened to smack Victim's head into the floor if he called for help. Gale told Victim, "I'm going to get you, I'm going to get you. I'm going to penetrate you, I'm going to penetrate you."

[Petitioner] lifted Victim and carried him into a cell shared by [petitioner] and another inmate named Marcus Moore. Victim did not want to go into the cell and resisted. After [petitioner] and Gale forced Victim into the cell, Muth shut the door and tied it shut with a towel.

While Victim was in the cell, [petitioner] sat on his chest and held his hands down. Gale and [petitioner] tried to pull Victim's pants down and Gale tried to penetrate him, telling Victim that he was going to "get" him "in the butt" and that Gale would knock Victim out and take "it" from him. Meanwhile, [petitioner] repeatedly told Victim to lie there and "take it like a grown man." Gale lowered his pants to reveal his boxer shorts, and Muth passed a rubber glove through the cell door to Gale, who tried to put the glove on his penis. According to Livingston County Sheriff Steve Cox, inmates often use rubber gloves as condoms. Gale told Victim that he was unable to obtain a sufficient erection to apply the glove. [Petitioner] continued to laugh and tell Victim to lie there and take it.

Victim heard a voice say "keys," which he took to mean that a guard was coming down the hallway. At that time, [petitioner] and Gale left the cell. As Victim left the cell, Gale told him that he would hit Victim, bust his face up, and kill him if Victim were to "snitch." Gale flexed his muscles and threatened to make Victim his "bitch" and to orally and anally sodomize him.

. . .

[Petitioner] did not testify at the guilt phase of his trial. No record was made as to [petitioner's] understanding that the decision of whether to testify in his own defense was his to make or that he was voluntarily choosing not to testify.

Although [petitioner] did not testify at trial, he testified, through an interpreter, at his sentencing hearing. n.1

> n.1 [Petitioner] waived jury sentencing and chose to be sentenced by the court.

-2-

At that time, although he had many complaints about his trial counsel, Jane Dunn, none of his complaints related to the fact that Dunn had prevented him from testifying in his own defense at trial. In addition, [petitioner] testified that he was generally satisfied with the assistance of Dunn's co-counsel, then-District Defender David Miller. n.2

> n.2 Hon. David Miller has since been appointed to the Circuit Court of Ray County.

[Petitioner's] direct appeal did not allege that the trial court denied him a right to testify in his own defense.

In [petitioner's] motion for post-conviction relief, he alleged that trial counsel Dunn ("Counsel") was ineffective for failing to advise him that he had the right to testify in his own defense at the guilt phase of his trial. [Petitioner] alleged that he told Counsel that he wanted to testify at trial, but Counsel responded that it was best that she not call [petitioner] to testify and that she planned to call other defense witnesses. [Petitioner] also alleged that the trial court failed to make sure that he was voluntarily waiving his right to testify. [Petitioner] alleged that if he had known that he could override Counsel's decision, he would have chosen to testify at the guilt phase of his trial and would have denied the State's allegations against him. [Petitioner] alleged that he could have testified to matters to which the other two defense witnesses were unable to testify, namely that Gale never exposed himself inside the cell or tried to use the rubber glove as a condom. [Petitioner] also alleged that he would have testified that the horseplay began after Victim had called Gale, "sexy." [Petitioner] alleged that, had he testified at trial, there is a reasonable probability that the outcome would have been different.

At the hearing on his motion, Counsel testified that she had been employed by the Public Defender's office for over sixteen years. Counsel was assisted in [petitioner's] case by the-District Defender Miller. Counsel had visited [petitioner] several times at the jail while his case was pending. At the meetings, Counsel would sometimes speak with [petitioner] in English, and sometimes she would bring a Spanish-speaking interpreter with her. A few days before [petitioner's] trial began, Counsel and an interpreter met with [petitioner] at the jail and discussed whether [petitioner] should testify; Counsel did not believe that it was necessary for [petitioner] to testify at his trial. Although Counsel did not specifically recall

-3-

telling [petitioner] that the decision whether to testify was his to make, she testified that she typically would explain this to her clients.

Now-Judge David Miller also testified that he had assisted Counsel in her representation of [petitioner] and that he accompanied her on several of her visits with [petitioner] at the jail. Although Judge Miller could not remember any specific conversation with [petitioner] about whether he should testify at his trial, Miller would routinely advise clients of their right to testify, and would have advised [petitioner] of this right, as Counsel's supervisor, if Counsel had not done so.

[Petitioner] testified at the hearing that he did not understand English well and that Counsel did not always bring an interpreter when she visited [petitioner] in the jail. [Petitioner] testified that he asked Counsel to call him to testify but that Counsel told him that other witnesses would tell his side of the story. [Petitioner] denied that either Counsel or Miller advised him that the decision whether to have [petitioner] testify was [petitioner's] to make. [Petitioner] testified that he thought it was Counsel's decision and that he would have testified had he known that he could. Specifically, [petitioner] claimed that he would have testified that Gale never exposed his genitals to Victim, never attempted to use a rubber glove as a condom, and never made any sexual advances to Victim while the men were in the cell. [Petitioner] would have testified that Victim was free to leave the cell at any time and that the men were just engaging in horseplay.

The motion court's judgment found that [petitioner's] claim that he was never advised of his right to testify in his own defense "strain[ed] credibility to the breaking point." The court noted that Counsel had questioned the jury panel during voir dire about a criminal defendant's right to testify, the credibility of a defendant in the jury's eyes, and the weight given to his testimony in comparison to other witnesses. This inquiry lasts for over six pages in the trial transcript, and [petitioner] had been in the courtroom and accompanied by an interpreter during this inquiry. The motion court also noted that [petitioner] "could scarcely have hired two more seasoned and professional attorneys to represent him" at the trial and that both attorneys testified that they typically advise their clients of their right to testify. The court found that [petitioner's] claims were not credible, and therefore the motion court denied the motion.

(Respondent's Exhibit K, pp. 2-6).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his sole ground for relief, petitioner claims that trial counsel was ineffective in denying him the ability to testify in his own defense, and thus the waiver of his right to testify was involuntary. He also asserts that the court should have assured that petitioner knew his rights. The claim was presented on appeal from the denial of petitioner's Mo. Sup. Ct. Rule 29.15 Motion. Respondent defers to the judgment of the state court.

On appeal, the Missouri Court of Appeals disposed of the claim as follows:

> [Petitioner's] sole point on appeal is that the motion court clearly erred in denying his Rule 29.15 motion for post-conviction relief because a review of the record leaves a definite and firm impression that [petitioner] was "denied effective assistance of counsel, due process of law, and the right to testify in his own defense" under both the United States and Missouri constitutions. Specifically, [petitioner] again claims that neither Counsel nor the trial court advised him of his right to testify in his own defense at this trial and that he would have chosen to testify if he had been properly advised

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

-5-

of his rights.

In order to establish that [petitioner's] trial counsel was constitutionally ineffective, [petitioner] must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). [Petitioner] must show, by a preponderance of the evidence: "(1) that counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney; and (2) that [petitioner] was thereby prejudiced." *Haskett v. State*, 152 S.W.3d 906, 909 (Mo. App. W.D. 2005) (citing *Strickland*, 466 U.S. at 687). There is a strong presumption that counsel was effective. *Strickland*, 466 U.S. at 689.

To prove deficient performance, the first prong of the *Strickland* test, a movant must show that his trial attorney's acts or omissions were outside the range of professionally competent assistance and were not sound trial strategy. *Strong v. State*, 263 S.W.3d 636, 644 (Mo. banc 2008). Here, [petitioner] claims that his trial counsel's failure to advise him that the decision of whether to testify was [petitioner's] to make was beyond the range of professionally competent assistance and was not sound trial strategy.

"The absolute authority to make certain fundamental decisions in criminal cases, including whether to testify, is a personal right of the defendant that cannot be made by counsel." *Slater v. State*, 147 S.W.3d 97, 101 (Mo. App. W.D. 2004). Although trial counsel's advice to a client about whether it is wise for him to testify is a matter of trial strategy that is rarely a ground for post-conviction relief, the decision is ultimately the defendant's to make, and should be made knowingly and voluntarily. *Hickey v. State*, 328 S.W.3d 225, 231 (Mo. App. E.D. 2010). When the evidence at the motion hearing is in conflict about what counsel actually advised a criminal defendant with respect to his right to testify, we defer to the credibility findings of the motion court. *Slater*, 147 S.W.3d at 101.

In this case, although [petitioner] testified that he was never informed by Counsel of his right to testify at his trial, the motion court found [petitioner's] testimony not to have been credible. We find ample evidence in the record to support the motion court's credibility findings and that they are not, therefore, clearly erroneous. As the motion court pointed out, both Counsel and Miller testified that they routinely advised clients that they had a right to testify in their own defense at trial. Under Missouri law, a trial counsel's testimony that he or she normally advises clients that they have a right to testify in

-6-

Case 4:11-cv-01277-DGK   Document 10   Filed 02/29/12   Page 6 of 9

their own defense is sufficient to sustain a motion court's finding that such advice was given in a particular case, even if counsel does not remember specifically giving the advice to a particular criminal defendant seeking relief. *See Williams v. State*, 168 S.W.3d 433, 444 (Mo. banc 2005); *Bode v. State*, 316 S.W.3d 406, 409 (Mo. App. W.D. 2010); *Slater*, 147 S.W.3d at 101. As further noted by the motion court, [petitioner] was present and aided by an interpreter when Counsel engaged in voir dire with the jury panel regarding a criminal defendant's right to testify at trial. Moreover, there is evidence in the record that was not mentioned in the motion court's judgment that indicates that [petitioner's] understanding of English might be better than he led the court to believe. Counsel and Miller met with [petitioner] and discussed his case sometimes without an interpreter, and the record contains numerous handwritten messages from [petitioner] to either correction officers at the jail or to the court that are written in English. In addition, as evidenced by [petitioner's] motion testimony, the testimony of his trial witnesses, and the surveillance video that was offered against [petitioner] at his trial, [petitioner] was able to communicate with his fellow inmates at the jail, seemingly without difficulty. All of this evidence supports the motion court's credibility findings.

The second part of [petitioner's] argument is that the trial court itself had an obligation to inform [petitioner] of his right to testify. Criminal courts are strongly encouraged to make a record whenever a defendant chooses not to testify in his own defense. In *State v. Edwards*, 173 S.W.3d 384, 386 (Mo. App. E.D. 2005), the court stated,

> [T]he more prudent course of action is for the trial court to *voir dire* the defendant, on the record, and outside the presence of the jury. The trial court may advise the defendant of the right to testify, obtain an acknowledgment that those rights are understood, and any decision regarding whether or not to testify is agreed to by the defendant.

*Slater*, cited by the court in *Edwards*, also states, "Once again we remind trial courts and criminal counsel that [claims like petitioner's] can almost always be avoided by making the simple record at the close of the State's evidence that is suggested in the Bench Book for Missouri Trial Judges, CR Chapter 2, Section 1.b (1999)." 147 S.W.3d at 102. This suggestion to the criminal trial courts, however, is not a requirement, and the court's failure to make such a record is

-7-

> not a proper basis for a Rule 29.15 claim. *See Edwards*, 173 S.W.3d
> at 386. While a record made by the trial court would have
> conclusively established that Counsel had advised [petitioner] of his
> rights, the absence of such a record does not prove [petitioner's]
> contrary assertion. It is, at best, evidence that would support
> [petitioner's] claim that he was not sufficiently advised. In any
> event, it is certainly not enough, standing alone, for us to conclude
> that the motion court's credibility findings are clearly erroneous.
>
> Accepting the motion court's credibility findings, we hold that
> [petitioner] has failed to satisfy the performance prong of the
> *Strickland* analysis. Therefore, we need not reach the prejudice
> prong. *Clay v. State*, 310 S.W.3d 733, 735 (Mo. App. W.D. 2010).

(Respondent's Exhibit K, pp. 6-9).

The resolution of this ground by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).[2]

Petitioner's ground is denied.

## **CERTIFICATE OF APPEALABILITY**

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this

---

[2] According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413, 120 S.Ct. at 1523.

standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." <u>Tennard v. Dretke</u>, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. <u>See</u> 28 U.S.C. § 2254, Rule 11(a).

## **ORDER**

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.


 /s/ Greg Kays
GREG KAYS
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: February 29, 2012.

-9-

Case 4:11-cv-01277-DGK   Document 10   Filed 02/29/12   Page 9 of 9